# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MICHAEL W. ROGERS,

     Plaintiff,

     v.

RICHARD ENGLISH,

     Defendant.

Case No. 19-3145-JAR-ADM

## MEMORANDUM AND ORDER

In this civil right case, pro se plaintiff Michel W. Rogers ("Rogers") alleges that defendant Richard English, the unit team manager at the El Dorado Correctional Facility ("EDCF") where Rogers was formerly incarcerated, was responsible for releasing Rogers into the prison's general population where other inmates attacked and stabbed him multiple times. During a status conference with the court on October 6, 2021, Rogers made an oral motion for appointment of counsel. (ECF 98.) Although the court previously denied Rogers' prior motions for appointment of counsel without prejudice, the landscape of the case has since changed significantly. For one, Rogers' remaining claim against English has now survived three different dispositive rulings by three different judges, which shows that Rogers' remaining claim has some merit. Second, Rogers was recently transferred to an out-of-state prison facility, which has complicated his ability to effectively prepare and prosecute his case at this late stage. For these reasons, explained in more detail below, the court grants Rogers' renewed motion for appointment of counsel. In granting the motion, the court merely finds that Rogers is entitled to volunteer counsel to the extent the court can find an attorney who is willing to represent him. This order does not guarantee that Rogers will be represented by counsel.

## I.      BACKGROUND

Rogers filed this case more than two years ago on August 7, 2019.  (ECF 1.)  His complaint alleges that EDCF officials placed him in the general prison population even though they knew about credible threats to Rogers' safety by other gang-affiliated inmates.  (*See generally id.*)  By way of background, in January of 2017, Rogers was transferred from Florida to the custody of the Kansas Department of Corrections ("KDOC") because of concerns for his safety after he testified against certain individuals in gang and drug-related cases.  (ECF 89, at 5.)[1]  Later that year, Rogers was housed in the general population at the Hutchinson Correctional Facility when another inmate who had been transferred from Florida spread information to gangs within the KDOC—including the Aryan Brotherhood—about Rogers' cooperation in Florida.  (*Id.*)  Rogers reported these threats to KDOC officials, and the KDOC moved him to a segregated unit and transferred him to EDCF, where he was placed in the general population.  (*Id.* at 5.)  Two days after the transfer, Rogers was attacked by two inmates that he believed were affiliated with the Aryan Brotherhood ("the 2017 attack").  (*Id.* at 6.)  Rogers ultimately came to reside in a "managed movement unit" ("MMU") at the EDCF.  (*Id.* (citing ECF 23-8 ¶ 16).)  He remained on protection-offender status, but, on January 31, 2019, the KDOC released him from that status and returned him to the MMU until that unit disbanded in June 2019.  (*Id.*)  EDCF officials contend that they offered MMU inmates the option of moving to the EDCF general population or into protective custody and that Rogers elected to be placed in the general population.  Rogers disputes this and contends that he requested

---

[1] The court relies on the district judges' respective orders (ECF 47 (sealed), 89) to succinctly summarize the background events giving rise to Rogers' claims while recognizing that the court was required to view evidence in a light most favorable to Rogers.

transfer to another facility and submitted that request to English.  (*Id.* at 7-9.)  On July 11, 2019, inmates attacked Rogers in the laundry facility, stabbing him in the back, head, arm, leg, and chest with an icepick-style weapon.  (ECF 47, at 11 (sealed).)  He suffered a collapsed lung and punctured kidney, requiring a four-day hospital stay.  (*Id.*)  The assailants were involved with validated white-supremacist threat groups.  (*Id.*)  About a month later, Rogers filed this case, asserting claims against the EDCF warden, Sam Cline ("Cline"); English; and Special Agent Brett Sissell ("Sissell").  (ECF 1, at 1.)  He asserted claims for denial of his procedural due process rights under the Fifth and Fourteenth Amendments (Counts 1-3 and 7-9) and violations of his Eighth Amendment rights (Counts 4-6).  (*See generally id.*)

The court granted Rogers leave to proceed in forma pauperis ("IFP").  On September 25 and 26, the court directed service of the defendants and also ordered the KDOC to prepare a report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).  (ECF 8 & 9.)  The case languished while the court granted the KDOC a series of extensions.  (ECF 13-17.)  KDOC eventually filed the *Martinez* report nearly nine months later on June 23, 2020.  (ECF 23.)  The court allowed the KDOC leave to file the entire *Martinez* report and all exhibits under seal, and, because of security reasons, allowed Exhibits N, O, and R to not be shared with Rogers.  (ECF 22.)  The KDOC's explanation regarding the exhibits is brief: "Exhibits N, O, and R are confidential security and investigative documents and should not be shared with the Plaintiff or the general public."  (ECF 21 ¶ 4.)  The exhibits include a Use of Force Report (Exhibit N) that memorializes the attack and includes graphic photos of Rogers after the attack, among other things; an Incident Report (Exhibit O) with multiple attachments; and an EAI Report detailing the 2017 battery on Rogers (Exhibit R).  (ECF 23-12, -13, and -16 (sealed).)

On July 15, U.S. District Judge Sam A. Crow issued a screening order under 28 U.S.C. § 1915A in which he dismissed Rogers' due process claims (Counts 1-3 and 7-9) but allowed his Eighth Amendment claims (Counts 4-6) to proceed.  (ECF 28, at 1.)  After screening, the case was reassigned to U.S. District Judge Thomas J. Marten and the undersigned.  (ECF 29.)

On August 14, defendants filed a motion to dismiss/motion for summary judgment.  (ECF 34.)  Because the motion asserted a qualified immunity defense, which also shields defendants from discovery, the court did not issue a scheduling order or explicitly open discovery.  So the case remained at a standstill while that motion was pending.

On April 27, 2021, Judge Marten granted defendants' motion in part and denied it in part. The court found that Sissell was entitled to qualified immunity but that Cline and English were not.  (ECF 47 (sealed).)  As to the claims against Cline and English, Judge Marten determined that the summary judgment record, viewed in the light most favorable to Rogers, showed that Rogers' injuries were sufficiently serious to implicate his Eighth Amendment rights; Cline and English were subjectively aware of an obvious risk to Rogers' safety if placed in the same unit as Aryan Brotherhood gang members, were aware of the history of violence between Rogers and the Aryan Brotherhood, and were aware of specific threats of violence made by members of that group to Rogers if he were returned to the general population; Cline and English had actual knowledge of threats to Rogers sufficient to support liability; Cline's and English's responses to these threats were not reasonable; Rogers' constitutional right to reasonable protection from attacks by inmates was clearly established; and genuine issues of material fact precluded summary judgment.  (ECF 89, at 4 (summarizing Judge Marten's April 27 order).)

Three days later, on April 30, the court entered a scheduling order establishing case-management deadlines.  (ECF 48.)  Among other things, the court ordered all discovery requests

4

to be served by August 23 and dispositive motions to be filed in October.  (*Id.* at 3-4.) Unbeknownst to the court at that time, Cline and English would go on to seek reconsideration of Judge Marten's order and simultaneously appeal to the Tenth Circuit—largely miring the discovery period with briefing and delays, including a brief stay.  (ECF 52, 64, 73-74.)  Defendants filed their motion to reconsider on May 11 and a notice of appeal on May 27, which the Tenth Circuit subsequently abated pending a ruling on the motion to reconsider.  (ECF 52, 64, 75.)

Because of Judge Marten's retirement, the case was reassigned to Chief District Judge Julie A. Robinson, who issued an order on August 20 that granted in part and denied in part Cline and English's motion for reconsideration.  (ECF 89.)  The court found that Cline was entitled to qualified immunity[2] but that English was not.  As to English, the court found that genuine issues of material fact existed as to whether Rogers was offered and declined placement in protective custody when MMU disbanded, noting that Judge Marten's order "chronicles both circumstantial evidence that the risk to Plaintiff should have been obvious to EDCF officials, and direct evidence that they knew of specific threats to Plaintiff made by members of the Aryan Brotherhood."  (*Id.* at 9-10, 12.)  English and Cline voluntarily dismissed their appeal to the Tenth Circuit, and the discovery period came to a close.  (*See* ECF 92.)

On September 17, Rogers filed a notice of change of address reflecting that he was transferred out of state to the Saguaro Correctional Facility in Elroy, Arizona.  (ECF 93.)  He stated that he was no longer able to electronically file documents or receive notices of electronic filing,

---

[2] Highly summarized, the court concluded that there was no evidence that Cline was on notice that Rogers could not be placed in the general population because of the risk posed by the Aryan Brotherhood or that Cline had knowledge of Rogers' history with the gang or his past complaints about gang-related threats, as many of those evidences preceded Cline's tenure as warden.  (ECF 89, at 14-15.)  Because of this, the court found there was insufficient evidence to demonstrate that Cline personally participated in the alleged constitutional violation.  (*Id.* at 15.)

and that he had not received multiple filings in this case, including Judge Robinson's order on the motion to reconsider.  He stated that his case file remained in Kansas.  He repeated these concerns in an October 1 motion for additional time to respond to English's discovery requests.  (ECF 94.)  The motion explains that Rogers had not received his case files, legal materials, or other paperwork.  And Rogers stated that, although he gave discovery materials to his former unit team supervisor to copy, he was unaware of the status of those copies.  Moreover, he had not been provided with certain documents because of the protective order entered in this case.

The protective order contemplated that Rogers would continue to be housed at a KDOC facility, and KDOC officials would continue to make confidential information available for his review.  (*See generally* ECF 83.)  The protective order allows English to designate certain documents as "confidential," including correctional records pertaining to an identifiable inmate, information related to security-threat groups at KDOC facilities, KDOC internal policies and personnel records, documents containing personal identifiers, medical records, and other records whose disclosure is prohibited or restricted by statute.  (*Id.* at 4-5.)  KDOC will produce any such records as follows:

> Documents designated as containing Confidential Information will be made available by KDOC officials, at a location of KDOC's choosing, for review by Plaintiff.  Plaintiff will be allowed to take handwritten notes of the Confidential Information, but Plaintiff shall not maintain hardcopies of Confidential Information.  Plaintiff will be allowed to review Confidential Information upon reasonable notice for a reasonable amount of time.  Plaintiff is not limited on the number of times he may request to review Confidential Information.  If plaintiff believes he requires production in hardcopy, he must first discuss the request with defendants to attempt to reach an agreement.  If the parties cannot reach a resolution, he can file a motion requesting a discovery conference with the court.

(*Id.* at 7.)

The same day Rogers filed his motion about being transferred to Arizona, English also contacted the magistrate judge's chambers to request a discovery conference and a stay of proceedings. English's email memorialized the logistical issues caused by Rogers' transfer, including missing legal documents and discovery requests and responses. Moreover, English sought an indefinite extension of case-management deadlines because he had been unable to timely obtain the transcript of Rogers' deposition from English's own court reporter.

The court convened a discovery conference on October 6, taking up Rogers' discovery issues, including the fact that his legal materials were still housed in Kansas, and English's request for an indefinite extension of remaining deadlines. The court extended the dispositive motion deadline to January 7, 2022, to provide English time to obtain the transcript, but it expressed concern about Rogers' ability to litigate his case from Arizona. During the discovery conference, Rogers made an oral motion for appointment of counsel. That motion is now before the court.

## II.    LEGAL STANDARD

"There is no constitutional right to appointed counsel in a civil case." *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989) (per curiam). However, pursuant to 28 U.S.C. § 1915(e)(1), the district court "has discretion to request an attorney to represent a litigant who is proceeding in forma pauperis." *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006) (per curiam). But the court must also be mindful that indiscriminately appointing "volunteer counsel to undeserving claims will waste a precious resource and may discourage attorneys from donating their time." *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1421 (10th Cir. 1992).

In evaluating whether to appoint counsel under § 1915(e)(1), the court considers: (1) the merit of the party's claims; (2) "the nature and complexity of the factual and legal issues"; and (3) the party's "ability to investigate the facts and present [the] claims." *Hill v. SmithKline Beecham*

*Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004).   A party requesting counsel has the burden "to convince the court that there is sufficient merit to [the] claim to warrant the appointment of counsel." *Id.* The fact that counsel could assist in presenting the "strongest possible case" is not enough because "the same could be said in any case." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006).

## III.    ROGERS' REMAINING CLAIM AGAINST ENGLISH HAS SOME MERIT

Rogers' remaining Eighth Amendment claim against English has survived Judge Crow's screening order, Judge Marten's order on defendants' motion for summary judgment/motion to dismiss, and Judge Robinson's order granting in part and denying in part reconsideration of Judge Marten's order.   In other words, Rogers' case has now been thoroughly vetted by three different presiding judges and yet it still remains pending.   To that end, the court has little trouble concluding that Rogers' claim appears more meritorious than many other claims filed by incarcerated litigants proceeding IFP.

In making this determination, the court relies on Judge Marten's April 27 order.   Judge Marten applied the burden-shifting framework that applies to a summary-judgment motion asserting a qualified immunity defense and found that, viewing the evidence in the light most favorable to Rogers, Rogers had properly alleged that English's conduct violated his Eighth Amendment rights.   Judge Marten noted that the conduct alleged exceeded mere threats of force and involved sufficiently serious (and indeed potentially life-threatening) injuries.  (ECF 47, at 19 (sealed).)   He further found that Rogers presented sufficient evidence to show that English had subjective knowledge of threats to Rogers' health and safety, including circumstantial evidence showing that Rogers had characteristics that would make him a target of the Aryan Brotherhood or other white-supremacist groups and direct evidence that English knew Rogers' health and safety

had been threatened if he were returned to the general population.  (*Id.* at 25.)  Judge Marten also found that Rogers had come forward with sufficient evidence to show English had actual knowledge of the threat to Rogers sufficient to impute liability for Rogers' injuries.  (*Id.* at 26.)  And, he found that Rogers had come forward with sufficient evidence to show that English's response to these threats was not reasonable.  (*Id.* at 29 ("Given those facts, a jury could conclude that officials knew of the presence of members of the white supremacy/Aryan Brotherhood security threat group in general population at EDCF, chose to keep Rogers in general population despite the risk to his safety in the presence of those inmates, and allowed Rogers to be housed in and travel to an area of EDCF where he risked encounters with members of that threat group.").)  Finally, Judge Marten found that Rogers' claims implicated a constitutional right that was clearly established and that would have been obvious to English at all relevant times and that genuine issues of material fact precluded summary judgment.  (*Id.* at 31-32 (recognizing that Supreme Court and Tenth Circuit authority is "well-settled" that prisoners have a constitutional right to reasonable protection from attacks by other inmates).)  Judge Robinson's subsequent order left Judge Marten's ruling intact as to English.

Both orders find disputed issues of material fact that preclude summary judgment, including disputed issues as to Rogers' communications with English about Rogers' return to the general population.  Indeed, given the significant factual disputes concerning these communications, it is difficult to see how this case would be resolved on a subsequent summary judgment motion, although English apparently anticipates filing one.  Appointing counsel at this stage would allow for a more streamlined and efficient progression of this case, which has now been pending for more than two years, and would hopefully provide the court with a more targeted summary-judgment record.

## IV.    ROGERS' ABILITY TO PREPARE HIS CASE IS HAMPERED

Rogers has demonstrated an adequate ability to communicate with the court and opposing counsel and has now avoided dismissal of his case on a screening order and two dispositive motions.  Under normal circumstances, this would weigh against appointment of counsel. However, in this particular case, Rogers' transfer to a facility in Arizona has significantly complicated his access to important discovery documents and to his own case files.  Rogers' lack of access to discovery documents at a late stage of the case not only bears on his own ability to prosecute his claims, but also implicates fairness concerns given the length of time this case has been pending.

This case involves sensitive KDOC documents concerning its own policies, internal communications regarding inmate housing, and documents involving individuals associated with identified security-threat groups.  As outlined in the protective order, many of the documents relevant to Rogers' claims also implicate safety concerns for the KDOC generally and for other inmates specifically, including those in protective custody.  In balancing Rogers' need for relevant information against the KDOC's need for safety in its facilities, the court entered a protective order that is fairly standard for these types of cases.  (ECF 83.)  It allowed the KDOC to provide Rogers with certain documents for review and note-taking, but Rogers was not allowed to retain copies of these documents in the absence of agreement by English or a court order.  (*Id.* at 7.)  But Rogers now finds himself housed in an Arizona facility with none of his materials.  It is not apparent how he would continue to reference these documents if he needs to see them.  And, to the extent that he needs any documents in hardcopy form, it is difficult to envision how he would even go about requesting them.  For example, the KDOC did not provide Rogers with three exhibits to the *Martinez* report that appear relevant to his claims in this case, and it is unknown whether Rogers

has even had an opportunity to review these documents, which are part of the record in this case. Appointing counsel would circumvent these types of lingering document-production issues associated with providing an inmate with access to sensitive KDOC documents so that he has a full and fair opportunity to litigate his claims. These issues could be easily addressed by including an attorneys-eyes-only provision in an amended protective order.

Rogers and English might be able to overcome these hurdles on their own if they were given more time to work through the logistics. But the court is unwilling to gamble on this by extending case-management deadlines, only to find out later that these problems were not resolved. Rogers filed this case shortly after his assault in the summer of 2019. This case sat dormant for ten months until the KDOC filed its *Martinez* report. Defendants then filed a summary-judgment motion asserting qualified immunity, further halting discovery because a qualified-immunity defense practically compels the court to stay discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009); *see also Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) ("[Q]ualified immunity is not only a defense to liability but also entitlement to immunity from suit and other demands of litigation. Discovery should not be allowed until the court resolves the threshold question whether the law was clearly established at the time the allegedly unlawful action occurred."). By the time the court ruled on defendants' motion on April 27, 2021, this case was more than a year-and-a-half old, with no discovery having taken place. Even after discovery began, Rogers had to contend with defendants' motion to reconsider and their appeal to the Tenth Circuit.

The court recognizes that the preparation of a *Martinez* report takes time and that defendants have every right to actively litigate their defenses. Indeed, they were successful in doing so as to two of the named defendants. But this has all resulted in protracted litigation through no fault of Rogers. At this point, both parties deserve a final resolution of this case, and appointing

Rogers counsel will insure that this case proceeds in a more orderly and efficient manner to facilitate the just, speedy, and inexpensive determination of this action. *See* FED. R. CIV. P. 1.

## V.    THE COMPLEXITY OF THE FACTUAL & LEGAL ISSUES WEIGHS SLIGHTLY IN ROGERS' FAVOR

While this case does not involve overly complex factual or legal issues, discovery has been significantly complicated by Rogers' transfer to an Arizona facility, as explained above.  This is particularly problematic because this case involves more document discovery than many other civil rights cases.  This case largely centers around English's actions and communication to English rather than alleged constitutional violations to which the plaintiff was present—e.g., excessive-force claims.  To that end, this factor also weighs slightly in favor of appointment of counsel.

## VI.    CONCLUSION

Because the above factors support appointment of counsel, Rogers' motion is granted to the extent that the court finds he is entitled to appointed counsel, provided the court can find an attorney who is willing to handle Rogers' case.  Given the length of time this case has been pending, the court intends to act quickly to attempt to secure representation for Rogers.  The court will enter an order within 21 calendar days from the date of this order either appointing counsel or informing Rogers that the court could not locate an attorney willing to take his case.

In the meantime, this case is stayed pending further order of the court.  If the court can secure representation for Rogers, it will set this case for a scheduling conference and reset case-management deadlines.  While most of the scheduling-order deadlines have now passed, the court set these deadlines without knowing that defendants would continue to litigate the issue of qualified immunity by both seeking reconsideration of Judge Marten's order and appealing that order to the Tenth Circuit.  While it is certainly their right to actively defend their claims, Rogers

deserves a full and fair opportunity to conduct discovery on his remaining claim, particularly considering the complications posed by his recent transfer to an Arizona facility.  Accordingly, if the court identifies an attorney who is willing to take Rogers' case, the court will be open to the possibility of revisiting case-management deadlines, within reason.

**IT IS THEREFORE ORDERED** that Plaintiff Michael W. Rogers' Oral Motion for Appointment of Counsel (ECF 98) is granted as stated above.

**IT IS SO ORDERED.**

Dated October 22, 2021, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge