IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Michael W. Rogers,

        Plaintiff,

v.                                            Case No. 19-3145-JAR-ADM

Richard English,

        Defendant.

**DEFENDANT'S MOTION FOR DISCOVERY AND SPOLIATION SANCTIONS
WITH MEMORANDUM IN SUPPORT INCORPORATED**

**Nature of the Matter Before the Court**

Plaintiff Michael Rogers, a former KDOC inmate, is suing KDOC Unit Team Manager Richard English under 42 U.S.C. 1983, alleging a failure to protect claim. Discovery closed in April 2022, with trial originally set for August 2, 2022. In the Pretrial Order, Plaintiff seeks damages and asserts claims not previously disclosed as required by Federal Rule of Civil Procedure 26. As per Fed. R. Civ. P. 37(c), Defendant seeks an Order prohibiting Plaintiff from requesting damages or asserting claims other than as previously disclosed in discovery, offering medical records that were not produced in discovery or offering undisclosed damage experts.

Defendant also seeks an order prohibiting Plaintiff from offering into evidence a June 5, 2019 Form 9 for failure to produce the original document when it was requested five months ago, in time for examination by an expert given that its authenticity is at issue. Plaintiff previously used a falsified version of this document, Doc. 26-1, to perpetrate a fraud on this Court. After the close of discovery, five months after Defendant's counsel specifically requested the original of the document, and after various excuses for its nonproduction, at 10:18 p.m. on Monday, September 12, 2022, Plaintiff's counsel now states Plaintiff has located the purported original. Given the substantial evidence of fraud, the document should be excluded.

Finally, Defendant seeks to preclude Plaintiff from offering testimony or argument about the alleged contents of notices he received that the MMU was closing, documents Plaintiff failed to produce in discovery.[1]

## QUESTIONS PRESENTED

1. Should the Court exclude damage claims, including amounts, not properly disclosed in Plaintiff's written responses to discovery?

2. Should the Court exclude Plaintiff's $200,000 in punitive damages claim where that claim does not appear in the Amended Complaint, and was not disclosed in written discovery responses?

3. Should the Court exclude a new claim based upon promissory estoppel where that claim was not properly pled or disclosed in discovery?

4. Should the Court prohibit Plaintiff from offering medical records not produced in discovery or damage experts not disclosed as per Rule 26?

5. Should the Court exclude the June 5, 2019 Form 9 and testimony about its contents of the document where the version previously filed by Plaintiff bore indicia of fraud and where the purported original, which has been in Plaintiff's possession since 2019, was only tendered a few short days before the original filing deadline for this Motion, leaving inadequate time to inspect the document and retain experts needed to conduct questioned document analysis?

---

[1] In connection with the Motion to Dismiss phase of this case, Plaintiff stated he never received written notice of the MMU closing. Now he is arguing the opposite. Defendant has separately filed a motion for judicial estoppel, Doc. 152, arguing that Plaintiff should not be allowed to change his position to gain what he now sees as a better claim for trial.

6. Should Plaintiff be barred from offering testimony or argument about the written notices he received that the MMU was closing since he never produced those documents in discovery?

## STATEMENT OF FACTS

Plaintiff's Complaint sought a total of $75,000 in compensatory damages and $200,000 in punitive damages jointly against the three then-named defendants.[2] The Complaint did not state that Plaintiff was seeking "in excess of $75,000."[3] Plaintiff filed an Amended Complaint on April 27, 2021, having been granted leave of Court on August 6, 2021.[4] The Amended Complaint includes no prayer for damages, including no prayer for punitive damages.[5]

In discovery, Defendant submitted interrogatories and requests for production to Plaintiff regarding his damage claims which Plaintiff summarized in Exhibit A hereto. Several interrogatories asked Plaintiff to respond under oath regarding the nature and extent of his damages. For example, in response to Interrogatory No. 11 asking for the total amount of damages and a description of each category of damage and the total amount claimed for each category of damage, Plaintiff wrote only, "I am currently assessing the damage claim . . . " The discovery response included a Rule 26(a)(1) disclosure, included in Exhibit B hereto. Neither Plaintiff's Rule 26(a)(1) disclosures or his discovery responses were ever supplemented as per Fed. R. Civ. P. 26(e).

In the Pretrial Order,[6] Plaintiff asserts damage claims not reflected on Exhibit A or otherwise disclosed in discovery as shown in this comparison chart:

---

[2] Doc. 1, at 14.
[3] *Id.*
[4] Doc. 85, 86.
[5] Doc. 86.
[6] Doc. 146, at 5(a).

|  | **Pretrial Order** | **Plaintiff's Disclosure (Exhibit A)** |
|---|---|---|

| Pretrial Order | Plaintiff's Disclosure (Exhibit A) |
|---|---|
| Lost wages: $53,670 | Lost wages: $24,700 |
| Damages from an Impact Design position "which it was indicated Rogers would receive until the 2019 attack at which point it was given to someone else." | Not disclosed. |
| Lifetime lost wages due to "ongoing seizures and PTSD" | No mention of lifetime lost wages.<br><br>No amounts stated. |
| Lifetime medical expenses (treatment and medication) for "ongoing seizures and PTSD" | No amounts stated.<br><br>Exhibit A lists five drugs; states costs would be supplemented but were not. |
| Damages for "nerve damage and back pain" | No amounts stated. |
| Punitive Damages of at least $200,000 | Not disclosed in discovery response. |

In a February 2022 email, attached as an Exhibit hereto, Plaintiff's counsel indicated they planned to produce medical records from Saguaro Correctional Facility where Plaintiff is currently incarcerated. Those medical records were never produced to Defendant's counsel. In that same email, Plaintiff's counsel referred to a "Damage expert (TBD)" on their list of witnesses to be called at trial. The deadline for expert witness disclosures in the Court's Scheduling Order was June 18, 2021 for Plaintiff and August 16, 2021 for Defendant.[7] Plaintiff filed no expert witness disclosures, including as to damages, by that date. Nor were any extensions of this deadline requested or granted. Nor is that issue preserved in the Pretrial Order, Doc. 146.

In the Pretrial Order, Plaintiff states for the first time that he is proceeding on a promissory estoppel theory based upon an alleged "written promise" made by a non-party, KDOC.[8] That

---

[7] Doc. 48, at p.2.

[8] For the first time, the Pretrial Order states a new factual contention/theory: "When Rogers was moved to the MMU/PC Lite unit in E Cellhouse, KDOC gave him a written promise stating he

theory was never pled in the Complaint or currently operable Amended Complaint. It was never disclosed in discovery.

Defendant anticipates that Plaintiff will seek to offer at trial a document that purports to be a June 5, 2019 Form 9 (inmate request to staff form) which was previously filed with this Court in response to the *Martinez* Report. Another copy of that document is attached as an Exhibit C hereto. At KDOC, these Form 9 requests are given back to the inmate; KDOC does not keep or maintain a copy of what was submitted. Plaintiff has had this document in his possession since 2019.

The version of the Form 9 filed by Plaintiff in Response to the *Martinez v. Aaron* Report, contains handwriting stating: "I am aware of the situation and it will be dealt with." Plaintiff and the Court attributed the handwritten comment to Defendant Richard English. Both Judge Marten and this Court cited that handwritten comment attributed to English as a basis for denying English's motion for summary judgment based on qualified immunity.[9]

On August 16, 2021, Defendant submitted a request for production of documents.[10] Plaintiff never produced any of the written notices he received regarding the closure of the MMU. The notices are not listed on Plaintiff's 26(a) disclosures as documents he intends to use at trial. On July 14, 2021, Defendant filed and served a Notice of Deposition *Duces* Tecum, requesting that Plaintiff bring with him all documents he planned to introduce at trial.[11] Everything Rogers

---

would not be moved back to general population until he was "ready." KDOC never rescinded this promise, and Rogers reasonably relied on it, including by signing forms that were labeled waivers but that Rogers was told and understood would merely mean that he would get to continue to enjoy the protections and privileges of the MMU/PC Lite unit, while maintaining separation from general population inmates."

[9] Memorandum and Order dated 8/20/21, Doc.89, at 9, n.24, citing Doc. 26-1, p.23.

[10] Doc. 88. Defendant's Request is included in Exhibit B.

[11] Doc. 78.

produced was photocopied; the original Form 9 was not among the documents Rogers produced at deposition.

At his deposition on April 27, 2022, Defendant English testified that the handwritten comment on the Form 9 was not his handwriting.[12] Although English has no memory of having received this particular Form 9, he would not have placed his signature where it appears on Doc. 26-1.[13] At this point, it is unknown what the contents of the original Form 9 stated. It is unknown whether the version of the document so recently proffered by Plaintiff is the original, and/or whether its contents have been added or changed.

Because of questions about the authenticity of the document, on April 25, 2022, Defendant requested that Plaintiff's counsel produce the original of the Form 9 for inspection. On April 27, 2022, Plaintiff's counsel responded with a general denial. In a hearing with the U.S. Magistrate Judge, Plaintiff's counsel stated that the original had been sent by Plaintiff to the Court for filing, and not retained by him. The Court's file reflects Doc. 26-1 was e-filed, as per the practice in prisoner cases.[14] In other back and forth interactions with Plaintiff's counsel regarding the document, Plaintiff's counsel represented that Plaintiff stated the document had not been sent to him by KDOC when he was moved from Kansas. KDOC records show that Plaintiff's property was received in Arizona, including all documents, the week of September 13, 2021.[15] Plaintiff's counsel later represented that the original of the Form 9 could not be located.

---

[12] Portion of Deposition of Richard English at 104:20-23, attached as Exhibit D hereto.
[13] Declaration of Richard English, attached as Exhibit E hereto.
[14] Doc. 26, at 18.
[15] Declaration of Darcie Holthaus, attached as Exhibit F.

As per the attached email, Exhibit G, at 10:18 p.m. on September 12, 2022, Plaintiff's counsel sent an email stating the "original" of the Form 9 was now available for inspection at their offices in Kansas City, Missouri. No explanation for the delay was given.

Plaintiff's counsel has agreed that counsel have conferred sufficiently prior to this Motion as contemplated by D. Kan. 37.1.

## ARGUMENT AND AUTHORITIES

### I.    APPLICABLE LAW REGARDING FAILURE TO DISCLOSE

In relevant part, Fed. R. Civ. P. 26 provides:

(e) SUPPLEMENTING DISCLOSURES AND RESPONSES.

(1) *In General.* A party who has made a disclosure under Rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

By signing the 26(a)(1) disclosure and the discovery responses, Plaintiff certified "that to the best of [his] knowledge, information, and belief formed after reasonable inquiry, . . . the disclosure is correct and complete at the time it was made."[16] Fed. R. Civ. P. 26(a)(1)(A) requires a plaintiff to give a computation of damages. Fed. R. Civ. P. 26(a)(2) requires disclosure of expert witness testimony. The time of disclosure is as ordered by the Court, here June 18, 2021.[17]

Fed. R. Civ. P. 37(c) under failure to disclose or supplement provides:

(1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. . ..

---

[16] Fed. R. Civ. P. 26(g).
[17] Fed. R. Civ. P. 26(a)(2)(D); Doc. 48, p.2.

In determining whether a failure to disclose is harmless or substantially justified, the Court looks to several factors. Those factors include: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the party's bad faith or willfulness.[18] "The burden to demonstrate that the failure to disclose is harmless or substantially justified is on the party who failed to properly disclose."[19] The Courts are more likely to exclude previously undisclosed evidence such as damage computations when it is offered shortly before trial or after discovery is closed.[20]

A party's disclosure obligations apply to any claimed damages. "A defendant generally is entitled to a specific computation of damages."[21] Plaintiff must disclose the damages theory, damages by category, lump sum requested, the calculations, and specify an expert if needed.[22]

In *Ruppell v. Basmajian,*[23] this Court excluded all evidence related to Plaintiff's potential damages for failure to provide adequate Rule 26(a)(1) disclosures, including computations. The Court found that Plaintiff had a duty to supplement, but had made no effort to supplement or correct the inadequate disclosures. Plaintiff had not produced a single document supporting the damage claim. This Court found that the failure to disclose was prejudicial to defendant, neither justified nor harmless.

---

[18] *Fish v. Kobach,* 309 F. Supp. 3d 1048, 1115 (D. Kan. 2018).
[19] *Id.*
[20] *Preventative Energy Sys., LLC v. nCap Ventures 5, LLC,* 2021 U.S. Dist. LEXIS 129587, at ** 14-15 (D. Utah 2021) (quotation marks and citations omitted).
[21] *Walker v. Corizon Health, Inc.,* No. 17-2601-DDC-KGG, 2022 U.S. Dist. LEXIS 65926, * 9 (D. Kan. Apr. 8, 2022) (citation omitted); *Nutritional Biometrics, LLC v. Empirical Labs, Inc.,* 2018 U.S. Dist. LEXIS 217389, * 14 (D. Co. 2018) (further citations omitted).
[22] *Preventative,* at **7-20.
[23] 2020 U.S. Dist. LEXIS 191778 (D. Kan. Oct. 14, 2020).

Similarly, Judge Daniel Crabtree of this District recently granted a motion to strike, excluding evidence of damages claimed in the Pretrial Order which had not been disclosed as per Rule 26. In *Walker v. Corizon Health, Inc.,*[24] Judge Crabtree noted that Fed. R. Civ. P. 26(a)(1) requires a computation of damages, which was not provided. The interrogatory response did not include a computation or itemized statement regarding damages. No supplementation occurred during discovery. The Court held that stating damages in a Complaint is insufficient if the damages are not also included in the Rule 26 disclosures.[25] The Court acknowledged the rule that a defendant is entitled to "a specific computation of plaintiff's damages."[26] Judge Crabtree also noted that while purely emotional damages might not require a computation, the Plaintiff should still not be able to surprise the other side by presenting a dollar amount for such damages not previously disclosed. The Court struck or excluded damage claims not properly disclosed as per Rule 26.

In *Preventative Energy Sys., LLC v. nCap Ventures 5, LLC,*[27] the Court granted a motion to exclude damages not previously disclosed in 26(a)(1) or in discovery, and which were not the subject of any timely supplementation. The Court rejected the non-movant's argument that the other side should just "guess" or somehow figure out the damages from the bits of information provided. The Court found that the failure to disclose could not be harmless because knowing the amounts being claimed affects how parties approach settlement and the decisions on what resources are devoted to discovery and to trial. Notice and detail regarding the damage claims allows the other party the opportunity to examine and prepare to meet the claims.

---

[24] 2022 U.S. Dist. LEXIS 65926 (D. Kan. Apr. 8, 2022).
[25] *Id.*, at * 12.
[26] *Id.*, at * 9.
[27] 2021 U.S. Dist. LEXIS 129587 (D. Utah 2021).

In *Preventative,* the Court also found that the damages claimed would require an expert, which neither party had designated.[28] In such circumstances, the Court found that allowing such "legally and factually questionable" evidence about damages would prejudice the other party because allowing such evidence would invite jury confusion and jury speculation as to damages, something the Court deemed highly prejudicial.[29] The Court also noted that had everything been properly and timely disclosed, the other party might have had the opportunity to hire experts to rebut such claims. The Court found that dealing with this evidence when offered at trial would be disruptive, as it would undoubtedly be objected to and cause the Court to have to deal with the issue during the trial itself.

Similarly, in *Nutritional Biometrics,* the Plaintiff failed to disclose its computations regarding damages, listed no categories of damages, did not state a lump sum being requested, failed to designate any expert, only gave vague responses to discovery, produced no documents in support of the claimed damages, and failed to supplement prior disclosures and responses. The Court excluded the damages, holding it would prejudice defendant to go forward where plaintiff "had not made a rudimentary attempt" to disclose its damage theories and the lump sums being requested.[30]

In *Jackson v. Kan. Co. Ass'n Multiline Pool,*[31] as in this Court's other cases, the Court recognized that untimeliness is *per se* prejudicial. There this Court issued an Order striking Plaintiff's untimely disclosures, finding they would impose prejudice on defendant as well as

---

[28] *Id.*, at * 14.
[29] *Id.*
[30] 2018 U.S. Dist. LEXIS 217389, at * 15.
[31] No. 03-4181-JAR, 2006 U.S. Dist. LEXIS 20881 (D. Kan. Apr. 10, 2006).

additional costs and delay where such disclosures were made after the close of discovery and shortly before a summary judgment motion was due.

Just last month, this Court issued an Order upholding the Magistrate's order to preclude a Plaintiff from offering a theory not alleged in the Complaint or disclosed in discovery. In that case, *SG v. Shawnee Mission School District,* this Court held that allowing new claims when discovery had long closed and a trial date been set would unduly prejudice the defendant school district.[32] "New claims, defenses or theories appearing for the first time in a pretrial order deprives one's adversary of fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse by those who employ a sporting theory of justice."[33] This Court held that the inclusion of new claims in the Pretrial Order deprived the defendant of potential Rule 12 motions and the opportunity to seek expert witnesses.[34] The Court found that the prejudice could not be cured since discovery was closed, and had been for months.[35]

## II. Analysis of Undisclosed Damages Computations/Claims

As per Fed. R. Civ. P. 37(c)(1) and the case law cited herein, Plaintiff is not allowed to use information or witnesses not disclosed as required, including damage claims in excess of the $24,700 for lost wages previously disclosed in discovery, and may not belatedly present any expert testimony on damages or undisclosed medical records in support of such claims.

Although Fed. R. Civ. P. 26(a)(1) disclosures were not technically required in this prisoner case, Plaintiff chose to provide a Rule 26(a)(1) disclosure, as per the attached. Plaintiff failed to

---

[32] No. 20-2078-JAR-ADM, 2022 U.S. Dist. LEXIS 152520, * 15, 2022 WL 3646221 (D. Kan. Aug. 24, 2022).

[33] *Id.*, at ** 18-19 (citing *Lenexa 95 Partners, LLC v. Kin, Inc.*, No. 20-2367-JWB, 2021 U.S. Dist. LEXIS 113335 (D. Kan. June 17, 2021), quoting *Burke v. Regalado*, 935 F.3d 960, 1005 (10th Cir. 2019)) (quotation marks omitted).

[34] *Id.*

[35] *Id.*

include the computation of damages required by Fed. R. Civ. P. 26(a)(1). Plaintiff also failed to supplement that disclosure as required, *i.e.*, when the prior disclosure is incomplete or incorrect. Or as he expressly stated he would.

Defendant specifically asked in discovery for Plaintiff to provide all of the information about his claims, including asking him to identify the injuries sustained, Interrogatory No. 7, asking him to identify any future care or treatment needed as a result of the incident, its nature and **scope and the medical provider, Interrogatory No. 9, asking him to identify medical expenses** incurred, Interrogatory No. 10, and most importantly, asking him to identify his damages in Interrogatory No. 11: **State the total amount of damages you are seeking and describe in detail each category of damage, the total amount claimed for each category of damage, and how the amount of each category was computed**." Rogers' responses were vague and insufficient, and admittedly so, for example in response to Interrogatory No. 11, stating he was evaluating the damages and would respond further or supplement his response. He never did.

Rogers also failed to designate experts required to support his claims for medical damages and "lifetime" wage loss by June 2021 as required by the Court's Scheduling Order. Rogers designated no experts.

Other than the $24,700 sum for alleged lost wages, no amounts for the damage claims were stated in discovery.

As Judge Crabtree held in *Walker,* damages cannot be asserted where they were not previously disclosed in discovery, certainly the case here. This case is also very similar to *Preventative, Nutritional Biosystems* and the other cases cited herein where evidence of similarly undisclosed and unsupported damages was excluded. This case is like *Ruppel,* where this Court excluded all evidence related to potential damages based upon Plaintiff's failure to provide

adequate information regarding his damage claims and failed to supplement or correct his prior responses.

In *Fish v. Kobach,* this Court found that defendant sought to introduce evidence not previously produced in discovery. The Court stated that "in many cases," the court excluded the evidence in question, indicating allowing this evidence would be tantamount to an "ambush."[36] Also in that case, the Court excluded testimony not previously and timely disclosed.[37]

Similar to *Fish* and the other cases cited herein, Plaintiff failed to disclose the damages being requested or to supplement his responses as required. Plaintiff failed to provide amounts for his damage claims as required. After discovery was closed and on the eve of trial, Plaintiff advances new theories regarding his damages, new claims, and new damage totals not previously disclosed. Plaintiff seeks to go to jury on such claims without the expert testimony required, having failed to timely designate and disclose an expert on damages, inviting the jury to speculate in a manner highly prejudicial to Defendant English. This is the classic trial by "ambush" which the Court did not allow in *Fish.* It should not be allowed here.

Further, Plaintiff cannot meet his burden of showing that the failures were "harmless" or "substantially justified." To cite Plaintiff's initial pro se status is no answer, as pro se parties have an obligation to comply with all of the Rules of Civil Procedure as this Court has recognized.[38] For example in *McKenzie,* this Court denied a pro se Plaintiff's request to include more damages, more claims and new issues where trial was two months away, finding that Plaintiff had already

---

[36] Id., at 1114-15, 1118.

[37] Fish v. Kobach, 16-2105-JAR, 2018 U.S. Dist. LEXIS 31292 (D. Kan. Feb. 27, 2018).

[38] *McKenzie v. Citibank,* No. 08-02510-JAR, 2009 U.S. Dist. LEXIS 114949, * 9 (D. Kan. Dec. 8, 2009) ("Plaintiff's pro se status does not excuse his obligation to comply with the fundamental rules of procedure") (citing *Hammad v. Bombardier Learjet, Inc.*, 192 F. Supp. 2d 1222, 1229 (D. Kan. 2002)).

been given an opportunity to amend (as has Plaintiff here), adding such claims "can fairly be characterized as both surprising and prejudicial," and including more damages and more claims would disrupt the orderly and efficient resolution of the case.[39] In that case, the Court found that "whatever injustice Plaintiff might suffer is due to Plaintiff's failure to carefully and timely consider the claims he could assert [and] the damages he could claim."[40]

Further, Plaintiff is a capable litigant as this Court found in denying several requests for appointment of counsel.[41] Moreover, Plaintiff and his counsel have had ample opportunity to supplement the prior responses but did not, choosing to assert these claims for the first time in the Pretrial Order, denying Defendant English proper notice and an opportunity to prepare regarding these new claims. As noted in the cases cited herein, this Court has had no trouble concluding that inadequate and untimely disclosures by a Plaintiff are *per se* prejudicial, particularly when they occur after discovery. Plaintiff will not be able to meet his burden of showing otherwise.

For example, if Plaintiff had properly disclosed the claim that he had been "promised" a position with Impact Design, Defendant would have followed up on that disclosure in discovery and designated witnesses and documents accordingly. As it is, Defendant can try to add witnesses and documents to respond to this claim, but such new claims are surprising, prejudicial, and disruptive to the orderly and efficient resolution of this case as this Court has recognized in similar cases. Plaintiff objects to any evidence brought forth after April 24, 2022, despite his new claims.[42]

---

[39] *Id.*, at ** 12-13.
[40] *Id.*, at * 10.
[41] *See, e.g.,* Order dated 7/15/20, Doc. 30, at 2, finding that based upon the record, Plaintiff is a capable litigant, able to prosecute his case without assistance of counsel.
[42] *See* Doc. 146; Doc. 151. Although Doc. 151 will be dealt with separately, the information objected to by Plaintiff as late at pages 9-10, relates to the newly disclosed Impact Design claims. Plaintiff cannot assert a new claim and deny Defendant the opportunity to rebut it.

If Plaintiff had timely disclosed he was seeking a lifetime of lost wages and a lifetime of medical treatment for PTSD and "ongoing seizures," Defendant would have followed up in discovery. If Plaintiff had timely and appropriately designated his required experts, Defendant would have had the opportunity to follow up, including deposing Plaintiff's expert and designating Defendant's own expert to rebut these claims. Defendant could have designated witnesses and documents from Plaintiff's medical records in Kansas and Arizona disproving these frivolous claims. More to the point and similar to *Preventative,* without the expert needed for these kinds of claims, this legally and factually questionable evidence invites jury confusion and speculation, which would be highly prejudicial to Defendant, as that district court found.

Yet another reason Plaintiff cannot show that the failure to disclose is substantially justified or harmless is that the portion of Plaintiff's deposition dealing with the damage claims was lost due to court reporter error/negligence. On April 29, 2022, Defendant sought to take Plaintiff's deposition a second time to account for this.[43] Plaintiff's counsel objected.[44] Shortly before the August 2, 2022 trial date, the U.S. Magistrate Judge denied the request to redepose Plaintiff.[45] Regardless of the merits of that ruling, the fact remains that Defendant is even more hamstrung in his effort to deal with the ever-changing nature of Plaintiff's damage claims without a deposition transcript on the subject of damages. The written discovery responses are even more critical.

While Plaintiff's counsel mentioned medical records from Saguaro Correctional Facility and a damage expert (TBA) in an email, see Exhibit H hereto, presumably in support of his damage claims, these cannot be offered given that the medical records were not produced during discovery. Nor was any damages expert timely disclosed as per Rule 26.

---

[43] Doc. 134.
[44] Doc. 136.
[45] Doc. 145.

The same thing is true with the punitive damage claim for $200,000. Although this claim appeared in the initial complaint as to the initial three defendants, it did not appear in the amended complaint which superseded the initial complaint as a matter of law, rendering the initial complaint of no legal effect.[46] Further, as Judge Crabtree held in his order excluding certain undisclosed damages, listing damages in a Complaint is insufficient if they are not also disclosed as per Rule 26.[47] Rogers did not disclose the punitive damages claim in his Rule 26(a)(1) disclosure or in his discovery responses. The punitive damage claim is barred.

### III.  Analysis as to the Newly Asserted Promissory Estoppel Theory/Claim

The theory that KDOC, a non-party to this action, "promised" Rogers he would not be sent to general population via the initial waiver document is not a theory pled in the currently operative Amended Complaint, disclosed in Plaintiff's 26(a)(1) disclosures or stated in a discovery response. It appeared for the first time in the Pretrial Order. Since this was never an issue, it was not a focus of discovery or trial preparation. As this Court recognized in *SG, McKenzie,* and *Fish,* to raise new claims/theories after discovery has closed and shortly before trial causes unfair surprise and prejudice to the opposing party as well as disrupting the trial. It should not be allowed.

### IV.  Plaintiff's Failure to Produce the Original Form 9 Justifies Sanctions

For five months now, Defendant has requested the original Form 9. Yet it is undisputed that the purported original was not tendered before the close of discovery or even in a seasonable

---

[46] *Fullerton v. Maynard,* No. 91-7002, 1991 U.S. App. LEXIS 20869, * 4 (10th Cir. Aug. 29. 1991) (inmate's amended complaint superseded initial complaint citing "well-established general rule that an amended complaint . . . supersedes the complaint it modifies and renders the prior complaint of no legal effect.") (citations omitted); *Heineman v. United States,* No. 06-4086-SAC, 2006 U.S. Dist. LEXIS 83592, at ** 4-7 (D. Kan. Nov. 16, 2006) (pro se plaintiff's amended complaint superseded prior complaint, citing numerous cases).
[47] *Walker,* 2022 U.S. Dist. LEXIS 65926, *12.

supplement. It should be excluded under Fed. R. Civ. P. 37(c)(1). Plaintiff cannot meet his burden of showing that the failure to timely disclose the original was harmless or substantially justified.

In this case, there are substantial questions about the authenticity of the document, including the addition of handwriting on the bottom of the document (which English testified was not his handwriting), and the curious placement of English's purported signature on the document as per English's Declaration. Adding to the suspicion, Plaintiff is a convicted forger.[48] Plaintiff's substantial and unexplained delay in producing the original has caused prejudice to Defendant English, given that there is little time remaining before trial to arrange and carry out questioned document examination on the purported original to determine if it is indeed the original as required by the Federal Rules of Evidence. [49] It is also unknown whether the Court would allow Defendant to designate an expert on this subject at this late hour. These reasons also illustrate the difficulty of curing the prejudice caused by the late production. Further, having to arrange for an expert to examine the document and have that expert testify at trial, along with other trial preparation deadlines and activities, would disrupt and delay the scheduled trial.

Finally, Plaintiff's bad faith and willfulness regarding this matter is evident. Plaintiff came up with this document, Doc. 26-1 at 23, in response to the *Martinez,* relying upon it to defeat summary judgment. It has been in his exclusive possession in his cell since 2019. It was sent to him in Arizona upon his departure from Kansas. Yet, Plaintiff could not come up with it when it was requested and Defendant was given varying explanations (all wrong), until the purported

---

[48] Plaintiff's Florida conviction for forgery is included in Exhibit I hereto, admissible as per Fed. R. Evid. 609.
[49] Fed. R. Evid. 1001(d); Fed. R. Evid. 1002; *See* 6 Weinstein's Federal Evidence 1003.03[6] at 1003-10 (2nd ed. 2022) (noting that production of the original is valuable for purposes of objecting to authenticity as differences may be more readily seen on an original or the original may be required for expert analysis).

original appeared a few days before this Motion was due, all without explanation. If this is not bad faith or willfulness, nothing is.[50]

Given the last-minute announcement that the long-requested "original" has now been found after a five-month delay, it is difficult to find cases precisely on point. However, in *Abildgaard v. Brulle,* the Court found that a similar unexplained failure to produce an original document and failure to explain the unavailability of a document constituted spoliation of evidence.[51]

There, the defendant sought an order precluding introduction of a document, an original handwritten acknowledgment of a debt.[52] The defendant "sharply" denied signing the document, denied the legitimacy of the document, and claimed that it was forged or arranged on Photoshop.[53] The defendant made several requests for production and inspection of the original document. Eventually, plaintiff agreed to produce the original but missed the agreed-to deadline. Defendant filed a motion to exclude the document based upon plaintiff's failure to produce the original. Defendant argued that he needed to inspect the document, which was necessary to the preparation of an adequate defense in the case.

The New York Court began its discussion with the best evidence rule, which requires the production of an original where the contents of a document are in dispute and sought to be proven. After discussion of the applicable rules and burdens, the Court found that the Plaintiff had not met his heavy burden required to admit the document in question, noting that it was unable to tell whether the document was in fact a reliable and accurate copy of the original document because

---

[50] Exclusion is also required by Fed. R. Evid. 1002, the best evidence rule, which will be addressed separately in the Motion in Limine, to be filed as per the Court's Trial Order.
[51] 999 N.Y.S. 2d 796, 2014 N.Y. Misc. LEXIS 4797 (N.Y. 2014), *aff'd*, 2015 2015 N.Y. Misc. LEXIS 4525 (N.Y. App. Term. Dec. 15, 2015).
[52] *Id.*, at 796.
[53] *Id.*

there was no original document. The Court found the Plaintiff's reasons for not producing the document insufficient, failing to contain any reasonable explanation as to why the original document was not produced. The Court reiterated that the document in question was challenged as being a forgery, which cannot be used at trial.

The Court found that Plaintiff's failure to provide the original and failure to adequately explain the unavailability of the document constituted spoliation, explaining that "spoliation of evidence occurs when a party alters, loses or destroys key evidence before it can be examined by the other party's expert." The Court cited the rule that: "[i]t is well established that a 'spoliator of key physical evidence is properly punished by striking its pleading even if the destruction occurred through negligence rather than willfulness provided the party was on notice that the evidence might be needed for future litigation. Alternatively, the court may, at the very least, preclude that party from offering evidence as to the destroyed product or document."

The Court found that once the defendant challenged the document's authenticity, plaintiff was on notice of a duty to preserve the original document as evidence. The Court further found that the document in question was essential to the case regarding the debt. The Court found that plaintiff's failure to produce the original constituted spoliation regardless of whether the document was lost negligently or in bad faith.

The Court found that admitting the document would be unduly prejudicial to defendant, given the claims of fraud, and the inability of the original document to be examined by an expert for the defense, including examination of the handwriting. The Court cited another New York case for the proposition, "[e]ssential to appellant's defense of forgery was expert evidence concerning the microscopic examination of the original documents to determine the presence of any aberrations in the questioned handwritings. . . Such evidence cannot be obtained through

examinations of the photostatic copies." The Court precluded the Plaintiff from offering the document in question into evidence. The District Court's decision was affirmed on appeal.

Similarly here, the Form 9 was relied upon by this Court in denying Defendant summary judgment and Plaintiff will again rely upon it at trial. Plaintiff was on notice to preserve the original. On April 25, 2022, after disputes about the authenticity of Doc. 26-1 arose, Defendant's counsel requested the original. At his deposition on April 27, 2022, Defendant English testified that the handwritten comment on the copy of the June 5, 2019 Form 9 was not his handwriting. English has also stated that he would not have signed the Form 9 where what purports to be his signature appears on the document. After five months of delay and varying explanations, at 10:18 p.m. on September 12, 2022, Defendant's counsel was informed, without explanation, that the document which has been in Plaintiff's possession since 2019, is now available, but too late for the necessary questioned document analysis, which requires an original. Absent adequate opportunity for a qualified expert to inspect the purported original, including conducting the kind of microscopic examination referred to by the New York Court, this document cannot be admitted at trial and should not be admitted as a spoliation sanction, given Plaintiff's failure to timely produce the purported original upon request.

## V. Spoliation Applies to Plaintiff's Failure to Preserve the Notice Document

While Plaintiff complains that Richard English should receive spoliation sanctions for not preserving the written notice given to MMU residents stating that the MMU was closing, the so-called "E-1 Memo," now for the first time characterizing that notice as a "release" or a "waiver,"[54] the same argument is true --- but more so ---- for Plaintiff himself who also failed to retain and

---

[54] Doc. 151.

preserve the document in question which he knew or should have known more than anyone would be a basis for his lawsuit. This Court has described spoliation as follows:

> Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.' 'Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.' There must be a showing of actual, not theoretical prejudice. The moving party bears the burden to demonstrate spoliation by the preponderance of the evidence. If the aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith.' 'Bad faith involves dishonest conduce and implies wrongdoing or some motive of self interest. . . . However, mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case. Without a showing of bad faith, a district court may only impose lesser sanctions.[55]

The Court may impose lesser sanctions than an adverse inference instruction in the absence of a finding of bad faith.[56]

In this case as outlined in the judicial estoppel motion filed concurrently herewith, Plaintiff's initial position was that he was not given notice that the MMU was closing, and that he was not given an option to return to protective custody. Under that position, the E-1 Memo (or any prior version of the notice), never existed.

Now, after discovery is over and on the eve of trial, Plaintiff has reversed his position, arguing that he received the E1 Memo, but that he chose protective custody.[57] Under Plaintiff's present version of the facts, where he claims he was in fear for his life the entire time if he did not go to protective custody, Plaintiff either knew or should have known that an attack, and therefore

---

[55] *Harris v. City of Kansas City,* No. 18-CV-2084-JAR (D. Kan. Mar. 2, 2021) (citations omitted).
[56] *Hennig v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008) (citing *Estate of Trantadue v. United States,* 397 F.3d 840, 862 (10th Cir. 2005)("The district court has discretion to fashion an appropriate remedy dependingon the culpability of the responsible party and whether the evidence was relevant to proof of an issue at trial.")).
[57] Doc. 146, at 6 ("When Rogers was told that E Cellhouse would be returning to a traditional general population unit, he did not consent to remaining in E Cellhouse.").

litigation based upon the attack, was imminent. Yet he failed to retain a copy of this document among the other documents and personal property he personally maintained in his cell. Nor did he ask any of the other MMU residents for an additional copy of the memo that was handed out to them. Or ask English for another copy for that matter. Plaintiff knew or should have known that this document would be in issue but failed to preserve it.

Further, given Plaintiff's recent 180-degree change in position regarding receipt of notice and his new decision to characterize the contents of that notice as a "release" or a "waiver,"[58] Plaintiff's failure to preserve his copy of the Memo has resulted in actual prejudice to English. For example, now Plaintiff is apparently going to testify and his counsel is going to argue that this notification document contained a release of liability or a waiver form, something no one has ever said or claimed before. For example, in the portion of Richard English's deposition attached to Plaintiff's spoliation motion, the E-1 Memo is referred to as a notification or a document.[59] English never referred to it as a release or waiver.[60] In the discussion of this particular document, Plaintiff's portion of the Pretrial Order refers to it as a "form," not a release or waiver.[61] In Plaintiff's factual contentions in the Pretrial Order, Plaintiff now says he was "told" the MMU was closing.[62] But he did not state that he was asked to sign a second release or waiver regarding the closure.[63]

---

[58] Doc. 151. Notably, Plaintiff's portion of the Pretrial Order referring to the E-1 Memo referred to it merely as a "form," not a release or waiver. Doc. 146, at 14, Section (b)(i) ("English also testified that he and his subordinates passed out a form telling inmates that the MMU was being disbanded and requesting that inmates come tell him whether they wanted to go into protective custody or general population.").

[59] Doc. 151-2.

[60] Id.

[61] Doc. 146, at 14, Section (b)(i) ("English also testified that he and his subordinates passed out a form telling inmates that the MMU was being disbanded and requesting that inmates come tell him whether they wanted to go into protective custody or general population. . ..").

[62] Doc. 146, at 6.

[63] *Id.*

Given that Plaintiff's theory has now changed to the fact that he was notified of the closure but that the E-1 Memo was a release or a waiver, it is prejudicial to English to not be able to rebut Plaintiff's newly fabricated assertions. In terms of bad faith, Plaintiff obviously had more of a self-interest than anyone to destroy the E-1 Memo if it was not to his liking, particularly since it was adverse to his initial position that he was never notified of the closure. Thus, his failure to produce the E-1 Memo.

Under these circumstances, the Court may impose an appropriate sanction given Plaintiff's failure to preserve this particular document, whether that be an adverse inference instruction or an Order that Plaintiff not be able to offer testimony or argument about the contents of the document. In particular, he should not be able to argue that the E-1 memo was a release or waiver (again, consistent with the best evidence rule), when he cannot produce this document which he knew or should have known would be important to his case.

## CONCLUSION

As this Court has emphasized in its rulings excluding undisclosed evidence as prejudicial, the disclosure provisions in Rule 26 exist for a reason, including avoiding allowing one party to "ambush" another by offering previously undisclosed evidence or claims. The same reasoning and remedy should apply here as well. Plaintiff should be prohibited from asking for damages not previously disclosed in a discovery response, *i.e.,* anything other than $24,700 for lost wages. Plaintiff should not be able to proceed on theories not previously disclosed, such as his promissory estoppel theory. Plaintiff should also be prohibited from offering the purported June 2019 Form 9, given disputes as to its authenticity, and Plaintiff's substantial and unexplained delay in tendering the purported original prior to September 13, 2022. Plaintiff should not be able to offer testimony or argument about the contents of any notices of closure he received, since he did not preserve and

produce the notices in discovery as required. It also should go without saying that undisclosed experts or medical records also may not be offered. Anything else is contrary to the rules of discovery, unfair and prejudicial to Defendant English, as well as disruptive to the scheduled trial.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/ Natasha M. Carter
Natasha M. Carter, KS No. 26074
General Counsel
Kansas Department of Corrections
714 SW Jackson St, Suite 300
Topeka, KS 66603
Tel: (785) 506-7615
Email: Natasha.Carter@ks.gov


Shon D. Qualseth, KS No. 18369
Assistant Attorney General/Senior Trial Counsel
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-597
Phone: (785)368-8424; Fax: (785)291-3767
Email: shon.qualseth@ag.ks.gov
*Counsel for Defendant Richard English*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of September, 2022, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.

/s/ Natasha M. Carter
Natasha M. Carter